IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **JEFFREY L. KUHL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:06-00722 |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' Cross-Motions for Judgment on the Pleadings. (Doc. Nos. 13, 17.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 3-4.)

The Plaintiff, Jeffrey L. Kuhl (hereinafter referred to as "Claimant"), filed an application for DIB on August 26, 2004, alleging disability as of November 6, 2003, due to back injuries, joint injuries, legs swelling, headaches, body pains, numbness in both upper and lower extremities, and loss of mobility. (Tr. at 56-59, 71.) The claim was denied initially and upon reconsideration. (Tr. at 33-37, 43-45.) On May 2, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 46.) The hearing was held on December 1, 2005, before the Honorable Arthur L. Conover. (Tr. at 221-52.) By decision dated February 9, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-25.) The ALJ's decision became the final decision of the Commissioner on August 24, 2006, when the Appeals Council denied Claimant's request for review.

(Tr. at 3-5.) On September 20, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15-16.) Under the second inquiry, the ALJ found that Claimant suffered from "a low back syndrome with radiculopathy secondary to chronic lumbosacral strain, aggravation of degenerative disc disease, and lumbar root irritation; a mid back syndrome secondary to thoracic strain; right chondromalacia patella; chronic obstructive pulmonary disease; and obesity", which were severe impairments. (Tr. at 16-18.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18.) The ALJ then found that Claimant had a residual functional capacity for a significant range of sedentary work with the following limitations:

> The claimant is restricted to lifting 10 pounds; cannot walk more than five to 10 minutes at a time; can never balance or climb ladders, ropes, or scaffolds; can only occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs with handrails; can only occasionally reach overhead with arms. The claimant needs to avoid concentrated exposure to vibration; needs to work in a temperature-controlled environment; cannot tolerate any exposure to harsh environmental irritants such as noxious fumes, gases, or heavy odors; and cannot tolerate any exposure to hazardous work sites. The claimant has a level of pain that is noticeable but would not preclude him from working within the aforesaid restrictions.

(Tr. at 19.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 23.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearings, the ALJ concluded that Claimant could perform jobs such as a surveillance system monitor,

dispatcher, and information clerk, at the sedentary level of exertion. (Tr. at 23-24.) On this basis, benefits were denied. (Tr. at 23-25.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 20, 1960, and was 45 years old at the time of the administrative hearing. (Tr. at 23, 56, 224.) Claimant had an eleventh grade education and a General Equivalency Diploma. (Tr. at 23, 77, 228.) In the past, he worked as an in-home health care worker, a fast-food cook, courtesy patrol driver, utility pole inspector, and sawmill laborer. (Tr. at 23, 72, 80-86, 246.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to give proper weight to the opinions and residual functional capacity assessment of Claimant's treating physician, Dr. Oscar P. Gosien, M.D. (Pl.'s Br. at 4-6.) The Commissioner asserts that Claimant's argument is without merit and that substantial evidence supports the ALJ's decision. (Def.'s Br. at 9-12.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th

Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527, 416.927. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given.  Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Claimant argues that the ALJ did not give appropriate weight to the opinion of his treating

physician, Dr. Gosien. The ALJ noted that Claimant initiated treatment with Dr. Gosien on December 7, 2004. (Tr. at 156.) At that time, Claimant reported complaints of recurrent pain in his joints, as well as wheezing and shortness of breath. (Id.) Dr. Gosien noted that Claimant's last chest x-ray was five years ago and recommended that he have a lordotic view chest x-ray to rule out right upper lobe parenchymal process. (Id.) On exam, Dr. Gosien observed a regular heart rhythm but rhonchi of Claimant's lungs. (Id.) He also noted that Claimant smokes three fourths of a pack of cigarettes a day. (Id.) On these bases, Dr. Gosien diagnosed tobacco abuse and chronic obstructive pulmonary disease ("COPD"). Based on Claimant's subjective complaints only, Dr. Gosien diagnosed osteoarthritis. (Id.) He prescribed Ibuprofen 800mg, Prevacid 30mg, and Albuterol. (Id.)

On December 16, 2004, Dr. Gosien observed that Claimant's heart and lungs were "okay" and continued him on Ibuprofen 800mg. (Tr. at 156.) Claimant presented with complaints of a sore throat, cough and congestion on January 18, 2005, and Dr. Gosien observed that his throat was red and his lungs were with rhonchi. (Id.) He therefore, diagnosed bronchitis, prescribed Phenergan with codeine, and continued Claimant on Ibuprofen 800mg. (Id.) On February 16, 2005, conducted a follow-up examination for Claimant's chronic low back pain, shoulder and elbow pain that had persisted the past ten years, deteriorating joints per his chiropractor, obesity, and COPD. (Tr. at 220.) On exam, Claimant presented with clear lungs, pain and tenderness in his lumbar region, some limitation of movement, and pain and tenderness on his knees. (Id.) Based on these subjective complaints, Dr. Gosien diagnosed osteoarthritis and prescribed Ibuprofen 800mg and recommended an MRI scan of Claimant's lumbar region. (Id.)

Also on February 16, 2005, Dr. Gosien completed a form Physical Residual Functional Capacity Assessment. (Tr. at 205-08.) He opined that Claimant could lift five pounds occasionally

7

and two pounds frequently, stand/walk for one hour in an eight-hour workday, sit for two hours in an eight-hour workday, could occasionally climb and balance, could never stoop, crouch, kneel, or crawl; and should avoid heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. (Tr. at 205-07.) Dr. Gosien noted that Claimant's pain was aggravated by walking, sitting, standing, and climbing stairs. (Tr. at 206-07.) He further opined that Claimant was "[u]nable to do work-related activities due to pain, tenderness in the joints and lower back, also on climbing stairs. He also has shortness of breath." (Tr. at 208.)

Claimant returned to Dr. Gosien on March 16, 2005, with complaints of shortness of breath and recurrent low back pain, which Claimant rated at a level eight. (Tr. at 220.) Dr. Gosien observed that Claimant's lungs were clear and that a MRI Scan revealed degenerative arthritis. (Id.) He therefore, diagnosed low back pain syndrome and continued his diagnoses of osteoarthritis and COPD. (Id.) Dr. Gosien continued Claimant's Albuterol, Prevacid, and Ibuprofen, and added Claritin 5mg and Nebulization with Proventil. (Id.)

On April 12, 2005, Claimant complained of achy joints and that Ibuprofen was not providing any relief. (Tr. at 220.) On exam, Claimant presented with pain and tenderness of his knees and lumbar region but his lungs were clear. (Id.) Dr. Gosien diagnosed osteoarthritis and prescribed HCTZ 25mg and Advair, as well as Albuterol and Ibuprofen 800mg. (Id.) On June 15, 2005, Claimant rated the intensity of his low back pain at a level eight and reported that he had decreased his smoking. (Tr. at 220.) On exam, Dr. Gosien noted that his lungs were clear but that he continued to experience pain and tenderness of the lumbar region and knees. (Id.) Consequently, he continued diagnoses of osteoarthritis and COPD and prescribed Ibuprofen 800mg, Prevacid 30mg, HCTZ 25mg, Claritin 10mg, Advair, Albuterol, and added a Spiriva Handihaler. (Id.) Claimant again

reported low back pain at an intensity of level eight on September 21, 2005. (Tr. at 220.) On exam, Dr. Gosien observed that Claimant's lungs were with rhonchi and that he continued to experience pain and tenderness of the lumbar region and knees. (Id.) He continued the same diagnoses and medications. (Id.)

The ALJ noted Dr. Gosien's treatment notes and assessment in his decision, but afforded it "some, but not controlling weight" because the limitations were not well supported by his medical findings or clinical observations, and were not fully consistent with the record as a whole. (Tr. at 22.) Claimant asserts that the ALJ erred in not further explaining his decision or citing examples from the record. (Pl's Br. at 3-6.) However, as the Commissioner notes, Dr. Gosien's treatment notes are essentially based on Claimant's subjective reports of pain and other symptoms. Regarding Claimant's back and knee conditions, with the exception of one MRI report (Tr. at 220.), Dr. Gosien's treatment notes do not reflect any objective or clinical findings. Rather, Claimant continued to complain of pain and tenderness and Dr. Gosien diagnosed osteoarthritis. Additionally, Dr. Gosien continued to treat Claimant's symptoms with only Ibuprofen 800mg as opposed to stronger pain medications, which is indicative of a lesser degree of pain than as Claimant alleged. This conservative treatment persisted after the 2005 MRI which revealed degenerative arthritis. The Court notes that contrary to Claimant's assertion, the ALJ noted that Dr. Gosien was Claimant's treating physician and that his treatment relationship with Claimant was initiated in December, 2004. (Tr. at 17-18.) The ALJ therefore, properly found that Dr. Gosien's assessment and opinion was not consistent with his own treatment notes.

Regarding other evidence of record, the objective medical evidence reveals only a minimal disc bulge at L4-5 (Tr. at 125.), mild lumbar degenerative changes (Tr. at 126, __.), and minimal

9

degenerative thoracic changes and mild scoliosis. (Tr. at 164.) The ALJ noted the independent medical examinations of Clifford H. Carlson, M.D., to whom Claimant was referred by his attorney (Tr. at 125-40.) and Saghir-Ur Rehman Mir, M.D., a board-certified orthopedic surgeon. (Tr. at 142-76.) In August, 2004, Dr. Carlson noted that despite thoracic and lumbar paravertebral tenderness, Claimant walked with a good gait, had intact motor strength, and normal reflexes at the knees. (Tr. at 129-30.) He diagnosed chronic lumbosacral spine sprain/strain syndrome with aggravation of degenerative disease and chronic thoracolumbar spine sprain/strain syndrome, and assessed only a 22% whole person impairment. (Tr. at 131.) Similarly, on November 20, 2003, Dr. Mir's physical exam revealed somewhat limited lumbar motion and pain with squatting but indicated that Claimant's gait was normal, that he could stand on his heels and toes, and that his hips, knees, and ankles were normal without signs of internal derangement. (Tr. at 163.) Dr. Mir diagnosed chronic lumbosacral strain with nerve room irritation and dorsal or thoracic strain. (Tr. at 165.) Dr. Mir noted that Claimant was then working and opined that he had a 15% whole person impairment, and therefore, was not temporarily totally disabled. (Id.) Although not specifically stated in the credibility portion of his decision, the ALJ thoroughly summarized and evaluated the other evidence of record. (Tr. at 15-18.) Additionally, the Court notes that a statement that a claimant is completely disabled or unable to work is an opinion on an issue reserved to the Commissioner, is not a medical source opinion, and the source of such an opinion is not entitled to any special significance. See 20 C.F.R. § 404.1527(e)(1)-(3) (2004) (stating that a statement by a medical source that you are "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner, the source of which is not entitled to any special significance). Based on the foregoing, the Court finds that Dr. Gosien's assessment was also inconsistent with the other evidence of record.

Upon a careful review of the evidence of record, the undersigned finds that the ALJ properly considered the opinion and assessment of Dr. Gosien in accordance with the applicable law and Regulations and that the ALJ's determination is supported by substantial evidence. The substantial evidence of record does not support Dr. Gosien's February 16, 2005, assessment. The Court notes that the ALJ also did not accept the assessments of the state agency physicians because they did not consider the combined effects of Claimant's impairments. (Tr. at 22, 177-85, 211-19.) Accordingly, Claimant's argument in this regard is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 17.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 28, 2007.

R. Clarke VanDervort
United States Magistrate Judge